```
                  IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF FLORIDA
                            MIAMI DIVISION
                    CASE NO. 1:18-cv-23576-KMW


AM GRAND COURT LAKES, LLC &
280 SIERRA DRIVE, LLC,

              Plaintiff,                    June 24, 2019
                                            2:03 p.m.
              vs.

ROCKHILL INSURANCE COMPANY,

              Defendant.                    Pages 1 THROUGH 21
     _____



                  TRANSCRIPT OF SHOW CAUSE HEARING
             BEFORE THE HONORABLE KATHLEEN M. WILLIAMS
                    UNITED STATES DISTRICT JUDGE



Appearances:

FOR THE PLAINTIFF:   FONT & NELSON, LLC
                     JOSE P. FONT, ESQ.
                     SONYA RANDOLPH, ESQ.
                     200 South Andrews Avenue, Suite 501
                     Fort Lauderdale, Florida 33301


FOR THE DEFENDANT:   LEVY LAW GROUP
                     LAUREN D. LEVY, ESQ.
                     3399 Ponce de Leon Boulevard, Suite 202
                     Coral Gables, Florida 33134


COURT REPORTER:      Yvette Hernandez
                     U.S. District Court
                     400 North Miami Avenue, Room 10-2
                     Miami, Florida 33128
                     yvette_hernandez@flsd.uscourts.gov
```

```
 1        (Call to order of the Court, 2:03 p.m.)

 2             THE COURT:  Court calls Case Number 18-23576, Grand

 3   Court Lakes, LLC v. Rockhill Insurance Company.

 4             Counsel, please announce your appearances for the

 5   record.

 6             MR. FONT:  Good afternoon, Your Honor.  Jose Font and

 7   Sonya Randolph on behalf of the Plaintiffs.

 8             MS. LEVY:  Good afternoon, Your Honor.  Lauren Levy on

 9   behalf of the Defendant, Rockhill.

10             Ms. Parks had every intention of being here today,

11   Your Honor.  I just want to advise the Court that her father

12   was rushed by ambulance mid-week last week to the hospital,

13   where he remains.  But she did -- I know she had every

14   intention of being here if that had not occurred.

15             THE COURT:  All right.  Everyone may be seated.

16             So we are here today on an order to show cause.  And

17   let me again start by giving some history in this case.  The

18   case was filed in July of 2018 and removed to this Court the

19   end of August.  It arises out of alleged damages that were

20   sustained by the Plaintiff's property on September 10th, 2017,

21   as a result of Hurricane Irma.  We have a trial date of August

22   5th, 2019.  So a good two years after the event we are going to

23   trial.

24             The Plaintiffs allege that the damages in a now

25   one-count breach of contract -- the bad faith claim was
```

1   dismissed, is premature, obviously.  The one count breach of

2   contract alleges that the damages are covered under the

3   insurance policy and that Defendants have refused to pay.  And

4   it appears through some correspondence that Defendants have

5   acknowledged there's some damage, but doesn't agree to the

6   amount or scope of coverage.  We'll circle back to that later.

7           As per any case, deadlines were set.  And as a reading

8   of the docket demonstrates, deadlines and orders were

9   disregarded.  We were here before on June 13th because I had

10  reviewed the docket.  I had recently been in another case

11  involving the same Defendant and was concerned that the case

12  had been careening out of control.

13          So let's talk about -- what we had discussed on June

14  13th was the failure of discovery deadlines to be complied

15  with, and Judge Torres entered an order, and the problems that

16  had been attendant to any party actually fulfilling their

17  obligations under not only my court order, but the local rules.

18          You'll remember that in December the Plaintiff had

19  moved to expedite discovery because of the nature of the

20  property, an assisted living facility, citing a statute that

21  allows for expedited discovery when the party is over 65.  We

22  had a hearing on January 10th, where I perhaps was too subtle,

23  too nuanced in my approach, and I suggested the Plaintiff might

24  not have been wise in citing to a statute about a party being

25  over 65, because, of course, the Plaintiff is a corporate

1    entity.  I denied that motion.  It was renewed three weeks

2    later, asking for an expedited discovery schedule because the

3    elderly living in the apartment complex needed the property to

4    be addressed.  That was answered, and I denied it -- or Judge

5    Torres denied it.

6           Then, in March, two months later, the Plaintiff

7    switched its approach and asked that the matter be abated,

8    meaning stopped, meaning delayed, asking that there be an

9    appraisal of the property -- that was on March 30th -- and to

10   extend all the deadlines.  Those same deadlines that the

11   Plaintiff had asked that we move up two months later, asked

12   that we abate.  Judge Torres ruled that that motion was not

13   well-taken, that the request for an appraisal was not viable on

14   the record.  Plaintiff had waived its right to ask for that

15   appraisal in that it initiated litigation.

16          And then two months later, Plaintiff filed the

17   Plaintiff's response to the Defendant's motion for sanctions,

18   with regard to its first request for production and first set

19   of interrogatories and to expedite responses to its second

20   request for production and second set of interrogatories, and

21   Plaintiff's motion for relief or abatement based on assignment

22   and transfer of insurable interests, and Plaintiff's motion for

23   extension of time to respond to Defendant's second request for

24   production and second set of interrogatories.

25          First, I don't think one should ever file anything in

1    federal court that requires half the page to caption its

2    relief.  It's a problem for the clerks.  But in a nutshell,

3    this is the second time in a two-month period that the

4    Plaintiff asked that all the deadlines be extended, which

5    raised the question for me, which we never did discuss:  Had

6    the status of the property or the elderly people changed such

7    that now more time was needed?  But in any event, that was

8    denied.

9          And then, of course, there was the matter of sanctions

10   with regard to discovery responses.  And that is why I set the

11   June 13th hearing.  And on that date, we discussed the fact

12   that Judge Torres entered his order confining Plaintiff's proof

13   in this case to that discovery which had been produced in a

14   timely fashion, that is, prior to April 19th, 2019.

15          I gave the Defendants an opportunity to file their

16   Daubert motions beyond the deadline, because, of course, there

17   was the deadline of pretrial stipulation, which no one had

18   fulfilled.  The case is coming to trial.  And so we need to

19   have a pretrial stip, witness and exhibit lists, and other

20   matters taken care of.  But I agreed to extend that date to

21   June 18th, 2019.  And on June 18th, the Plaintiffs filed an

22   unopposed motion to extend time because the Defendants had not

23   responded to the Plaintiff's submission of its proposed

24   stipulation, witness list.

25          And finally, on June 20th, the pretrial stip was

1    filed.  I granted the motion for an extension of time.  And I

2    will acknowledge to all that was a mistake.  That's on me.  I

3    should never have given you more time.  Because on June 20th,

4    you filed what purported to be a pretrial stipulation, but was,

5    in fact, not.  Whatever it was, it was filed 15 minutes after

6    your deadline, and it did not include exhibit and witness

7    lists, proposed jury instructions, and proposed verdict forms.

8    And you'll recall, Ms. Levy, we had that conversation about

9    whether the pretrial stip included jury instructions and

10   verdict forms in our other trial.  So I struck that.  I struck

11   that stipulation.

12          And then, later that day, you-all refiled.  And oddly

13   enough, what you refiled was still inadequate.  You gave me an

14   exhibit list -- well, the Plaintiffs gave me an exhibit list.

15   The Defendants gave me a copy of the Plaintiff's exhibit list.

16   It is unclear to me -- and we'll talk about whether or not all

17   the 58 exhibits are, in fact, items that were produced before

18   April 19th, which I had directly asked for.  But then a joint

19   proposed witness list.  And it is deja vu all over again in so

20   many respects, Ms. Levy.  Here's another favorite on that hit

21   parade:  Notwithstanding the fact that the parties again

22   estimated a five-to-six-day trial estimate, the total witness

23   testimony time exceeds 50 hours.

24          And I hate to bore Ms. Levy with my math.  She's heard

25   it before several times.  But if we go to trial for five days,

1    and we start at 9:00, and we end at 5:00, and we take a break

2    for lunch, and we allow the jury time to attend to physical

3    imperatives, that would leave us at most and at best maybe six

4    and a half hours every day, if something doesn't come up, like

5    the parties disagreeing, or not marking their exhibits, or

6    doing something equally time consuming, but in light of this

7    record, fairly certain to happen.  And by my count -- let's do

8    the math together -- even if we go six times five, 30 hours in

9    order for us to pick a jury, open, close, put on witnesses.

10   But there it is.  Fifty hours.

11        The Defendant's witness list fails to provide a

12   description of the witness testimony for 11 of the 16

13   witnesses.  Plaintiffs fail to provide a description for some

14   of their testimony.  You didn't file joint jury instructions.

15   I think the total is 130 pages.

16        And so here we are.  Here we are talking about what

17   the parties have consistently failed to do, despite the

18   multiple orders given in the course of this and other cases.

19   I'll cite the parties to McDonald v. Emory Healthcare, 391

20   Fed.Appx 851, Jones v. Graham, 709 F.2d 1457.  And in those

21   cases, the Eleventh Circuit upheld dismissal of claims where

22   there is repeat failure to adhere to court order.

23        Then in -- well, we'll get to that in a moment.

24        So what I need to ascertain here today is what I can

25   do not at this point to get the parties to comply with court

1    order, because that seems to be impossible, but what I can do

2    to address the parties' continued violation and ready this case

3    for trial.

4             So I guess my first question is:  What is the amount

5    of damages that the Plaintiff is asking for?

6             MR. FONT:  Yes, Your Honor.

7             This is 150,000-square-foot assisted living

8    facility --

9             THE COURT:  I'm sorry.

10            MR. FONT:  I apologize, Your Honor.

11            THE COURT:  You can stand up.  But here's also a good

12   primmer on what happens when I ask you a question.  I didn't

13   ask for the square footage, which you've repeated numerous

14   times.  If I wanted to know the square footage, my question

15   would have been:  "Mr. Font, what is the square footage of your

16   property?"

17            The question I asked:  What is the total amount of

18   damages you are claiming you are owed by Rockhill?

19            MR. FONT:  Policy limits, Your Honor.  Under the

20   policy, it's 16 --

21            THE COURT:  16 million?

22            MR. FONT:  Yes, Your Honor.

23            THE COURT:  Wow.  You-all don't talk to each other, do

24   you, at all?  You don't follow cases in this district and you

25   don't learn from your mistakes.

```
 1              Okay.  Let's start with the witness list -- oh, no.

 2     I'm sorry.  The exhibit list.  I'm going to assume that the

 3     entire 58 exhibits are those that were produced, exchanged,

 4     were somehow given to each other before April 19th.  Is that

 5     correct?

 6              MR. FONT:  That's correct, Your Honor.

 7              THE COURT:  Okay.  So I've got the exhibit list.

 8              Now I have the witness list, and I'm actually going to

 9     be -- again, I'll probably not -- I'll regret this.  But first

10     we're going to go through the witness list.  And if somebody

11     has described what the witness is going to testify to, we'll

12     keep that person on the witness list for now.  Everybody else

13     is gone.  So Mr. Arce is already gone.  I don't know why he's

14     listed because he's been excluded by Judge Torres.

15              So then the records custodian from Arce, we'll cut

16     that off.

17              Mr. Gonzalez, it's explained why he -- and this is,

18     again, Docket Entry 102-3.  We're going through the Plaintiff's

19     witnesses.  Number 3, Alain Gonzalez.  He was described.

20              Records custodian of AIG Construction.  I don't know

21     why I'd need that.

22              Alfred Brizuela that you have described.  Records

23     custodian of Alfred Brizuela.  I guess that will be him.  So

24     that's out.

25              Number 6, Edward Bittman, his testimony is described.
```

```
1    He can stay.

2              Records custodian of Five Star Claims, out.

3              Alon Levy, Plaintiff's property manager before and

4    after, okay.

5              The corporate representative of Rockhill.  Is that

6    the -- who is the person who was deposed in Indianapolis?

7              MR. FONT:  Corporate representative of Rockhill, Your

8    Honor.

9              THE COURT:  Yeah.  Does he or she have a name?

10             MR. FONT:  Yes, Your Honor.  It's Julie Corbett.

11             THE COURT:  Okay.  So Julie -- I think she's elsewhere

12   listed, but -- so we'll just say -- I'll just cross 10 out

13   because Julie Corbett -- well, I'll just -- we'll just put

14   Julie Corbett there.

15             Records custodian, gone.

16             Timothy Philmon, okay.

17             Records custodian of Donan Engineering, who will

18   present expert opinions.  Well, that's a first.  But I guess

19   that's Mr. Donan.  So he's already testifying.  So we'll take

20   out the records custodian, Number 13.

21             Chris Porosky.  Don't know what he's going to testify

22   to.  Number 14 is out.

23             Number 15 is out.

24             The Defendant's adjustor, Colby, Chavers, Engel,

25   Martin.  I guess that's Colby Chavers.  So that's in.
```

```
 1              Records custodian out.

 2              Jonathan Kirschner.  Don't know who he is.  He's out.

 3              Mason Mitchell, Tines, out.

 4              Records custodian, out.

 5              Jupiter corporate rep, out.

 6              All Risks, out.

 7              And Julie Corbett, since she's described later on, I'm

 8     going to allow you to kind of cross-reference.  So she'll be

 9     okay.

10              Then we have Defendant's witnesses.  Colby Chavers or

11     Chavers Colby.  I don't know.  That person can testify.

12              Julie Corbett, okay.

13              Mitchell Mason, Timothy Philmon.

14              Records custodian for Serenity Health.  Yeah.  No.

15              Edward Bittman.  He's already mentioned.  So I'll

16     allow that.

17              Arturo Fernandez, no.

18              Corporate representative, no.

19              Corporate representative, no.

20              Humberto Braz, no.

21              Alfredo Brizuela.  He's already mentioned.  So okay.

22              Humberto Torres Braz, no.

23              Christopher Porosky, no.

24              Jorge Llizo, no.

25              Jonathan Kirschner, no.
```

1          Moshe Popack, no.

2          All right.  So now we've already winnowed down our

3     witnesses to the persons I haven't struck because you did not

4     comply with my order.  That should allow you both the capacity

5     to determine, of those witnesses, who you wish to call because

6     you'll be given nine hours of witness testimony.  Nine hours

7     and nine hours alone.  And when I mean nine hours, I mean, if

8     you take up all that time with your direct, you won't get it on

9     cross.  I'm just not going to go into how to slice it and dice

10    it.  That's all you've got.  So figure it out.  Because when

11    you start trial, I'll have a timer and I will figure out and I

12    will stop you if you have not conformed to the time I've given

13    you.

14         As to the time I've given you, in the Pretrial

15    Stipulation, it is unclear to me what exactly the defenses are

16    because -- well, I guess maybe I'm not unclear.  Ms. Levy, I've

17    done, as I've said before, a review of Rockhill's litigation in

18    this district.  And I find it statistically improbable that in

19    every case the property had previously undisclosed prior

20    damages that Rockhill didn't catch; that, two, none of the

21    property owners or managers cooperated with the investigation

22    of the claim; that, three, the claims in all of these distinct

23    and individual lawsuits were all under the deductible, and that

24    they then involved exclusions in the property policy.  It is

25    just -- it defies the law of large numbers that in every single

```
 1   case this is the situation for each individual claim.

 2        I'm not going to go into it now, but at some point,

 3   Ms. Levy, somebody's going to go into it.  Because, of course,

 4   one has a good-faith obligation, not only under the policy, but

 5   one has an obligation as a lawyer to make certain

 6   representations to court that have a bases.  In this instance,

 7   we once again have a virtual smorgasbord as it were of policy

 8   language that you have listed in your affirmative defense.

 9        I will cite you to Meridian of Palm Beach Condominium

10   Association v. QBE.  When you merely recite the language in the

11   policy, without giving even a slight indication of how the

12   affirmative defense is germane to these facts, and in this

13   case, at least at first instance on a motion to strike, the

14   Court could strike them.  I am, in fact, striking your

15   affirmative defenses.  You've just cut and pasted out of your

16   policy.  So at this juncture, and on this record, and with

17   Rockhill's inability to, once again, engage in any discussion

18   that would give me a viable pretrial stipulation, I am striking

19   your affirmative defenses, with the exception of one.

20        You articulate preexisting damage.  I don't know if

21   your experts addressed that.  Because, of course, we have no

22   dispositive motions, nothing to indicate what the experts

23   really think about this individual case, other than your client

24   says no money is owing, and the Plaintiffs think the entirety

25   of the policy is owing.
```

1        Just for your information, Mr. Font, we just had a

2   case where the Plaintiffs asked for half the policy, which

3   would have been 16 million, and got 2 million.  Jurors are not,

4   in fact, stupid, nor do they respond to cases that are not

5   well-tried and well-presented to them, when people ask them for

6   a lot of money.

7        So in any event, again, zero and the full amount of

8   the policy.  I don't know what it is about these cases.  But

9   you, Ms. Levy, you're not going to be talking to the jurors

10  about all of those affirmative defenses because you haven't

11  pled them properly.  I'm not going to give them the policy and

12  say:  "Figure it out for yourself."

13       Basically, we have damage.  It was either caused by

14  the hurricane or it wasn't.  If it wasn't, you don't pay.  If

15  it was, you do.  The jury will suss that out.  They'll suss it

16  out based on the 58 documents in the exhibit list, of course,

17  subject to evidentiary objections, relevance and hearsay, and

18  the like, and the witnesses that you have left.  And that's

19  Alain Gonzalez; Alfredo Brizuela; Edward Bittman; Alon Levy;

20  Ms. Corbett; Timothy Philmon; Colby Chavers; Julie Corbett, we

21  mentioned; Mitchell Mason -- or Mason Mitchell; Timothy

22  Philmon; Edward Bittman, and that's it.  And hopefully these

23  gentlemen will be able to adduce any records that need to be

24  adduced.  If not, well, you didn't -- you didn't adhere to to

25  the Court order.

1          So I think that's it for me.  And that was far more

2     than I should have or intended to do in response to a pretrial

3     stip which is designed to make the case easier to try and more

4     comprehensible to a jury.

5          As to the jury instructions, they are stricken in

6     their entirety.  They're just -- they're just -- that was

7     just -- you wasted paper.  And again, Ms. Levy, how this could

8     have happened twice in a row is not something I understand.

9     But the jury instructions, I guess -- I don't know what I'll do

10    about them.  We'll have to see.  Maybe the jurors will just

11    have a verdict form and they can figure it out for themselves.

12    That's actually not a bad idea, now that I'm thinking about it.

13          You, Rockhill, still have to July 5th for the Daubert,

14    which might cut back a few witnesses.  But right now, this case

15    will take five days at the most.  You will each have nine hours

16    to present testimony.  You will have a half an hour for

17    opening, an hour for closing.  We have to do jury instructions

18    and motions at some point.  I will send you, if I haven't

19    already, the questions I ask potential jurors.  And I will

20    adjust them to these parties, making certain no one has any

21    Rockhill policy or it doesn't live, in fact, on the property.

22    And I think that gets us to a place where we can possibly try

23    this case to a jury.

24          Any questions?

25          MR. FONT:  Your Honor, one point of clarification.  I

 1   know the Court alluded to Mr. Arce.  As far as I understand the

 2   record, the issues that were giving rise were resolved and he

 3   was not stricken by Judge Torres.  I disclosed him right off

 4   from the beginning in affidavit form.  Photos and so forth have

 5   all been provided to counsel.  So I just want to bring that to

 6   the Court's attention.

 7        THE COURT:  Well, I don't know that that's the case.

 8   But why don't you direct me to the docket entry where that all

 9   got resolved.

10        MR. FONT:  Yes, Your Honor.

11   (Pause in proceedings.)

12        THE COURT:  I was pretty certain that part of the

13   whole Daubert motion was that the two remaining experts relied

14   on Mr. Darcy [sic], who was no longer a viable witness, but ...

15        MR. FONT:  Yes, Your Honor.

16        THE COURT:  Let me -- direct me to where I ...

17        MR. FONT:  The amended disclosures were Docket Entry

18   50.

19        THE COURT:  Okay.  Let me take a look here.

20        Sorry.  My clicker isn't working.

21   (Pause in proceedings.)

22        THE COURT:  So, Ms. Levy, is it then correct that the

23   Daubert is not directed to the use of Mr. Darcy's report, but

24   that all other experts would be redundant?

25        MS. LEVY:  Your Honor, the basis of the original

1   motion to strike the experts, or the expert disclosures, or the

2   supplemented expert disclosures, was based on the fact that

3   they -- all three of the experts listed by the Plaintiff did

4   not -- well, A, they didn't satisfy Rule 26 as far as their

5   testimony and their affidavits, as well as two of them were

6   disclosed late, well past the expert disclosure deadline, Your

7   Honor.  And --

8             THE COURT:  Was that Mr. Darcy?  Am I pronouncing his

9   name correctly?

10            MS. LEVY:  I think it's with an A, Your Honor.  Arce.

11            THE COURT:  Arce.  That's right, Mr. Arce.

12            MS. LEVY:  Yeah.  Initially, Mr. Arce was disclosed,

13   and only him, the first time around.  And then you struck him.

14   You actually did an order striking that expert --

15            THE COURT:  That's what I thought.  And then --

16            MS. LEVY:  And then they supplemented.  You gave --

17   you entered an order giving them another opportunity.  And

18   Plaintiffs listed Mr. Arce again and then added the other two

19   gentlemen, Mr. Brizuela and Alain Gonzalez.

20            THE COURT:  Okay.  And ...

21            MS. LEVY:  And when we were here, Your Honor, on June

22   13th, Your Honor, that same day, or the next day, entered an

23   order denying our motion to strike the supplemented expert

24   disclosure and allowing us to do the Daubert.

25            THE COURT:  Right.  Right.  Right.  Right.

```
 1            Okay.  All right.  Then I will put Mr. -- subject to
 2    my review again, which I thought Judge Torres had taken up part
 3    of this, but the record is such a -- in such a state.  But I
 4    will -- for the time being, I will put Mr. Arce back on the
 5    witness list.  I knew he had been stricken once.
 6            All right.  Anything else?  Any other -- other than
 7    his being now subject to Ms. Levy's motion with regard to
 8    Daubert credentials, any other questions?
 9            MR. FONT:  No, Your Honor.
10            MS. LEVY:  No, Your Honor.
11            THE COURT:  All right.  Well, I have a question.  It's
12    more of a thought.  I -- I don't know how you don't understand
13    what these scheduling orders mean.  I don't know how you can
14    fail to fulfill your obligations and think that there will be
15    no consequence.  I don't understand how what might be viable
16    claims and defenses could be presented in such a way, with no
17    thought to the conduct being engaged in and how that would be
18    redressed by a court.
19            But let me say once and for all this is the last time
20    I have a conversation with you to say:  You really ought to pay
21    attention and adhere to the rules.  You really need to become
22    conversant with not only the rules of this courtroom, but the
23    local rules.  This is the last time in this case where I've had
24    two conversations with you and Judge Torres has had multiple
25    conversations with you.  The next time there is a rule
```

1    violation, a disregard of a court order, a failure to adhere,

2    then you've been given notice, ample notice, of a consequence.

3        The Plaintiff is already been restricted to certain

4    materials that were produced by a certain time.  The Defense

5    has had its affirmative defenses stricken.  There's nothing

6    left of your cases that I can address in a way to make

7    consequence meaningful, except your respective claims.

8        So I advise both parties to have meaningful

9    conversations with each other, as professionals would.  I don't

10   think you actually sat down with each other to do the pretrial

11   stip.  It's required in the local rules to meet face to face

12   and converse.  I don't think you did that.  I don't think

13   you've read the local rules about attaching correspondence to

14   motions without leave of court.  I think your paralegals have

15   tried to wade through a lot of this.  But they're not hired by

16   your respective clients to do this work.  You are.  And they're

17   not asked by the Court to give dates as to when you will be

18   available and ready for trial.  You are.  And the bottom line

19   is if is there is any kind of consequence professionally, or as

20   terms the case, the consequences will befall you.

21       So my question is how you could have conducted

22   yourself and not thought of that.  But now you know going

23   forward.  Really, we won't have this conversation again.  Not

24   in any way, shape, or form.

25       All right.  We're adjourned.

1          MR. FONT:  Thank you, Your Honor.

2       (Proceedings concluded at 2:42 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   UNITED STATES OF AMERICA        )

 2   ss:

 3   SOUTHERN DISTRICT OF FLORIDA  )

 4                   C E R T I F I C A T E

 5          I, Yvette Hernandez, Certified Shorthand Reporter in

 6   and for the United States District Court for the Southern

 7   District of Florida, do hereby certify that I was present at

 8   and reported in machine shorthand the proceedings had the 24th

 9   day of June, 2019, in the above-mentioned court; and that the

10   foregoing transcript is a true, correct, and complete

11   transcript of my stenographic notes.

12          I further certify that this transcript contains pages

13   1 - 21.

14          IN WITNESS WHEREOF, I have hereunto set my hand at

15   Miami, Florida this 26th day of June, 2019.

16

17                      /s/Yvette Hernandez
                        Yvette Hernandez, CSR, RPR, CLR
18                      Certified Shorthand Reporter
                        400 North Miami Avenue, 10-2
19                      Miami, Florida 33128
                        (305) 523-5698
20                      yvette_hernandez@flsd.uscourts.gov

21

22

23

24

25
```