UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.1:18-cv-23576-KMW

AM GRAND COURT LAKES LLC
& AM 280 SIERRA DRIVE LLC,

      Plaintiffs/Counter-Defendants,

v.

ROCKHILL INSURANCE COMPANY,

      Defendant/Counter-Plaintiff.

_____/

**ROCKHILL INSURANCE COMPANY'S MOTION TO STRIKE AND *DAUBERT* MOTION
TO EXCLUDE PLAINTIFFS' EXPERTS AND INCORPORATED MEMORANDUM OF LAW**

      Defendant, ROCKHILL INSURANCE COMPANY ("Defendant" or "Rockhill"), by and

through its undersigned counsel and pursuant to Fed. R. Civ. P. 26(a)(2)(B), Fed. R. Civ. P.

26(a)(2)(D)-(E), Fed. R. Civ. P. 37, the Local Rules of the United States District Court for

the Southern District of Florida, this Court's Scheduling Order **[D.E. #21]**, Fed. R. Evid. 702,

and the Court's June 13, 2019 Order **[D.E. #94]**, files Defendant's Motion to Strike and

*Daubert* Motion to Exclude Plaintiffs' Experts and their proffered testimony and Incorporated

Memorandum of Law, stating as follows:

**A.**      **FACTUAL BACKGROUND**

      1.      As the Court is aware, the instant lawsuit arises out of an alleged September

10, 2017 Hurricane Irma loss and damages to certain real property located at 280 Sierra

Drive, North Miami, Florida 33179 (the "Insured Property") which the Plaintiffs, AM GRAND

COURT LAKES LLC and AM 280 SIERRA DRIVE LLC. (the "Plaintiffs") contend are

covered under an insurance policy they entered into with Defendant, Policy Number

RCPPRU000002 (the "Policy"), with effective dates November 7, 2016 through November

7, 2017.

2.      On October 2, 2018, the Court entered its Scheduling Order **[D.E. #21]**, pursuant to which the deadline to disclose experts, expert witness summaries and reports was January 28, 2019.

3.      On January 28, 2019, Plaintiffs filed their Expert Witness List (the "Original List") listing three (3) purported experts: Sergio Arce, Alfredo Brizuela and Alain Gonzalez. **[D.E. #44]**

4.      No expert reports were filed with the Court or served on Defendant with the Original List; however, a January 22, 2019 <u>unsigned</u> "Affidavit" of Sergio Arce was attached thereto.  In this <u>unsigned</u> Affidavit Mr. Arce states that he is not a licensed engineer, nor is he independently considered "an expert as to cause, scope and value of damages" in this case; rather, his role was "to work in combination with the findings of Alfredo Brizuela, a licensed engineer, and Alain Gonzalez, a general contractor." **[D.E. #44-1].**

5.      Exhibit "1" to Mr. Arce's <u>unsigned</u> "Affidavit" is his Curriculum Vitae **[D.E. #44-1]**, and Exhibit "2" are photographs which bear the label of Defendant's Independent Adjuster, Engle Martin & Associates, and appear to have been provided to Engle Martin & Associates by Edward Bittman, Plaintiffs' Public Adjuster **[D.E. #44-1].**

6.      Also attached to the Original List was the Curriculum Vitae for Alfredo Brizuela **[D.E. #44-2]**.

7.      On February 18, 2019, Defendant filed its Motion to Strike Plaintiffs' Expert Witness Disclosures pursuant to Fed. R. Civ. P. 26(a) and Fed. R. Civ. P. 37(c). **[D.E. #46]**.

8.      On March 5, 2019, the Court entered a Paperless Order striking Plaintiff's expert witness disclosures, for good cause shown, as well as by default under Local Rule 7.1 giving the Plaintiffs seven to cure such non-compliance. **[D.E. #49]**

9.      On March 12, 2019, Plaintiffs' filed a Supplemented Expert Witness List (the "Supplemented List") setting forth the same three (3) purported experts as the Original List,

to wit: Sergio Arce, Alfredo Brizuela and Alain Gonzalez, wherein Plaintiffs state that these gentlemen "will testify regarding the cause, scope and value of the loss…" *See **[D.E. #50]**, pgs. 1- 2.*

10.     Attached to the Supplemented List is the very same January 22, 2019 <u>unsigned</u> "Affidavit" of Sergio Arce, with his same Curriculum Vitae and the same photographs that were attached as exhibits to the Original List, all of which were previously stricken by the Court.  *See **[D.E. #50]**, pgs. 5-19.*

11.     Also attached to the Supplemented List are eighty-nine (89) pages of what appear to be images and data from August 4, 2018, which are not specifically referenced or explained in the <u>unsigned</u> "Affidavit" of Sergio Arce**.  *See **[D.E. #50]**, pgs. 20-108.*

12.     Additionally, attached to the Supplemented List is a February 3, 2019 "Affidavit" of Alain Gonzalez.  The substantive portions of Mr. Gonzalez' "Affidavit" are nearly identical to those of Mr. Arce's unsigned "Affidavit" and seem to suggest that Mr. Gonzalez' findings are merely derivative of Mr. Arce's, as opposed to resulting from his own independent investigation.   Specifically, Mr. Gonzalez states that he "reviewed and ultimately agree[s] with the findings of Sergio Arce", *see **[D.E. #50]**, pg.110*; and Mr. Gonzalez' "conclusions" were based, in large part, on his "review of the findings of Mr. Arce." *See **[D.E. #50]**, pg. 111*.  There is little or no indication of *any* investigation by Mr. Gonzalez individually or otherwise as to the cause, scope and value of the subject loss. Following Mr. Gonzalez' "Affidavit" are: (i) his "Master Resume"; (i) a March 8, 2019 "Budget/Proposal", prepared post-"Affidavit"; and, (iii) the same eighty-nine (89) pages of unexplained August 4, 2018 images and data which followed Mr. Arce's "Affidavit".  *See **[D.E. #50]**, pgs. 116- 207.*

13.     Finally, attached to the Supplemented List is a February 6, 2019 "Affidavit" of Alfredo Brizuela.  The somewhat substantive portions of Mr. Brizuela's "Affidavit" are nearly

identical to those of those of Mr. Arce and Mr. Gonzalez and indicate that Mr. Brizuela's findings are merely derivative of Mr. Arce's, as opposed to resulting from his own independent investigation.  Specifically, Mr. Brizuela states that he "reviewed and ultimately agree[s] with the findings of Sergio Arce"; and Mr. Gonzalez' "conclusions" were based in large part on his "review of the findings of Mr. Arce."  *See **[D.E. #50]**, pg. 211.*  There is no indication that Mr. Brizuela conducted any investigation let alone one in his individual capacity as to the cause, scope and value of the purported damages being claimed by the Plaintiffs.

14.     Following Mr. Brizuela's "Affidavit" are: (i) his Curriculum Vitae, *see **[D.E. #50]**, pgs. 216- 249*; (ii) an August 21, 2018 Statement of Inspection wherein Mr. Brizuela states that the "bridge structure" at the Insured Property is structurally unsound and unsafe (without any related findings as to causation, etc.) with corresponding photographs, *see **[D.E. #50]**, pgs. 250-267*; and, (iii) the same eighty-nine (89) pages of unexplained August 4, 2018 images and data which followed Mr. Arce's and Mr. Gonzalez' "Affidavits".  *See **[D.E. #50]**, pgs. 268-356.*

15.     Accordingly, on April 25, 2019, Defendant filed a Motion to Strike the Supplemented Expert Disclosures filed by Plaintiffs or alternatively, to Extend the Deadline for Defendant to File its *Daubert* Motions **[D.E. #86]**. After a duly-noticed June 13, 2019 hearing on said Motion, the Court entered a Paperless Order  denying the Motion to Strike but granting the Motion for Extension of Time, specifically allowing Defendant to file its *Daubert* motions as to Plaintiffs' Experts by July 5, 2019. **[D.E. #94]**

16.     For the reasons more particularly set forth herein, Sergio Arce, Alfredo Brizuela and Alain Gonzalez should be stricken and/or their proffered expert testimony be excluded pursuant to *Daubert*.

**B.**   **MEMORANDUM OF LAW / LEGAL ARGUMENT**

**I.**   **APPLICABLE PRINCIPLES AND LAW**

**A.**   ***Daubert* Standard and Fed. R. Evid. 702**

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sherriff of Monroe County, Fla.*, 402 F. 3d 1092, 1103 (11th Cir. 2005). As explained in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the admissibility of expert testimony is governed by Fed. R. Evid. 702. The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a preponderance of the evidence. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999*). See also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion . . ."). "Under Rule 702[1] and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286,1291 (11th Cir. 2005)(*citing Daubert*, 509 U.S. at 589, 113 S.Ct. 2786). The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).

---

[1] A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
    (b) the testimony is based on sufficient facts or data;
    (c) the testimony is the product of reliable principles and methods; and
    (d) the expert has reliably applied the principles and methods to the facts of the case.

*Fed. R. Evid.* 702.

To facilitate this process, district courts engage in a three-part inquiry to determine the admissibility of expert testimony: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F. 3d 548, 562 (11th Cir. 1998).[2]

In determining the reliability of a scientific expert opinion, the Eleventh Circuit also considers the following factors to the extent possible: (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F. 3d 1333, 1341 (11th Cir. 2003).

The Court's inquiry must focus "solely on principles and methodology, not on conclusions that they generate." *Daubert*, 509 U.S. at 594-95. The objective of the Court's gatekeeping role is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant filed. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). This includes excluding expert testimony where a large analytical leap must be made between the facts and the opinion. *Chapman v. Proctor & Gamble Distributing LLC*,

---

[2] The Eleventh Circuit refers to the aforementioned requirements as the "qualification", "reliability" and "helpfulness" prongs and while they "remain distinct concepts"; "the courts must take care not to conflate them." *United States v. Frazier*, 387 F. 2d 1244 (11th Cir. 2004)(citing *Quiet Tech*, 326 F. 3d at 1341)).

766 F. 3d 1296 (11th Cir. 2014).  Opinions which employ an off the cuff methodology by "deploying neither data nor analysis" are unacceptable. *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000); *State Farm Fire and Casualty Co. v. Electrolux Home Products Inc.*, 980 F. Supp. 2d 1031, 1039 (N.D. IN. 2013).

**B.    Plaintiffs' Experts Do Not Satisfy Daubert or Fed. R. Civ. Evid. 702 and their Proffered Expert Testimony is Inadmissible**

**i.    Sergio Arce**

a.    *Qualification* - Sergio Arce is Not Qualified to Testify Regarding the Subject of the Testimony

On its face, Mr. Arce's so-called "Affidavit" Mr. Arce[3], who is a public adjuster and not a licensed engineer, is not qualified to testify regarding the subject of his proffered testimony.  To that end, paragraph 11 of this "Affidavit" states as follows:

> Although for purposes of litigation I'm commonly and independently relied upon as an expert as to cause, scope and value of damages in association with a hurricane, **in the matter at hand it was concluded that it would serve the interest of all to work in combination with the findings of** Alfredo Brizuela, a licensed engineer, and Alain Gonzalez, a general contractor. [**emphasis** supplied] S*ee **[D.E. #50]**, pg. 7.*

Mr. Arce concedes he is not an expert, let alone an expert qualified to opine as to the "cause, scope and value of the loss…" *See **[D.E. #50]**, pg. 1.*  The vagueness surrounding Mr. Arce's credentials, which do not include any expertise, degrees or otherwise, makes it clear that that he is not competent to testify as an expert as to causation or anything that requires expertise. *Chapman*, 766 F. 3d at 1304.

b.    *Reliability* - Sergio Arce's Methodology is not Sufficiently Reliable as Determined by the Type of Inquiry Mandated by *Daubert*

The same <u>unsigned</u> "Affidavit" **[D.E. #44-1]** that has already been stricken by this Court is back again and still it does not contain an adequate basis and/or sufficient reasons

---

[3] The failure of Plaintiffs to comply with Fed. R. Civ. P. 26 will be addressed in the subsequent section(s).

for the opinions which Mr. Arce intends to express and does, nor does it contain any facts or data he considered which equates to *nothing*. **[D.E. #49]** In fact, Mr. Arce states that his opinions and findings were not complete when the Affidavit was filed with the Court. Specifically, Mr. Arce states:

> At this point, and **while in the process of completing my report as to all opinions and findings in association with the full scope, cause and [and] value of the damages in question**, I have been asked to provide an opinion as to the finalized findings associated with the structural integrity of the Living Facility and the potential risks to the residents that stem therefrom [**emphasis** supplied].  *See [D.E. #50], pg. 8.*

The references to unspecified "site inspections", "moisture reads", "thermal imaging", "visual inspections" and "observable conditions" do not lead to any conclusion that Mr. Arce actually performed any inspections or testing or employed any methodology to determine the scope and cause of the purported damages. The photographs attached to the Affidavit[4] are not analyzed or discussed anywhere by anyone. S*ee [D.E. #50], pgs. 20-108*   As such, it is impossible to ascertain whether Mr. Arce's methodology, theory or technique (to the extent there were any) have been tested or are capable of being tested; have been subjected to peer review and publication; have been generally accepted in the relevant scientific community; or whether there is a known or potential error rate. *Chapman*, 766 F. 3d at 1305. To boot, there never was an actual report with any final so-called "conclusions" or "opinions" served or filed with the Court.

Consequently, the Court and/or the jury would be forced to make a substantial analytical leap between the facts and Mr. Arce's lack of an actual opinion, his testimony should be excluded.

> c.    *Helpfulness* - Sergio Arce's Testimony Would Not Assist the Trier of Fact in Understanding the Evidence or Determining a Fact at Issue

---

[4] There are also photos attached to the "Affidavit" which were neither taken nor specifically addressed by Mr. Arce.  S*ee [D.E. #50], pgs. 15-18.*

As previously stated, Mr. Arce, is a public adjuster and not a licensed engineer, whose own testimony in his "Affidavit" concedes that he is not an expert as to the cause, scope and value of the loss and damages being claimed by the Plaintiffs.  His opinions and findings (or lack thereof), in addition to being incomplete by his own admission, are sketchy at best, and non-existent, as worst.  Mr. Arce's testimony does not concern matters that are beyond the understanding of the average lay person because he is a lay person and does not offer anything more than that for the trier of fact to consider.  *Frazier*, 387 F. 3d at 1262. *See also King v. Cessna Aircraft Co.*, 2010 WL 1980861, *5 (S.D. Fla. 2010).  Mr. Arce, as a proffered expert will not assist the trier of fact but rather will confuse the trier of fact.  *Id.* at 1262-1263.

Accordingly, as presented in his "Affidavit" attached to Plaintiffs' Supplemented List, Sergio Arce's proffered expert testimony would be of no assistance to the jury in understanding the evidence or determine a fact at issue in this case.

### ii.    Alain Gonzalez

a.    *Qualification* - Alain Gonzalez is Not Qualified to Testify Regarding the Subject of the Proffered Testimony

As demonstrated by his Affidavit, **dated after the January 28, 2019 expert witness disclosure deadline** [**emphasis** supplied].  Mr. Gonzalez, who is a general contractor and not a licensed engineer, is not qualified to act as an expert in this case by his own admission.  To this end, paragraph 4 of Mr. Gonzalez' "Affidavit" states as follows:

> Although for purposes of litigation I'm independently relied upon as an expert as to cause, scope and value of damages in association with a hurricane, **in the matter at hand it was concluded that it would serve the interest of all to work in combination with the findings of** Sergio Arce, a licensed public adjuster, and Alfredo Brizuela, an engineer. [**emphasis** supplied] *See [D.E. #50], pg. 109 at par. 4.*

Accordingly, Mr. Gonzalez', by his own account, is also not an expert as to the "cause, scope and value" of the subject loss. *See [D.E. #50], pg. 2.*  As is the case with Mr.

Arce, the lack of Mr. Gonzalez' credentials confirms that it is undeniable that he is not competent to testify as an expert as to causation, scope or value or anything that requires any sort of expertise. *Chapman*, 766 F. 3d at 1304.

      b.    *Reliability* - Alain Gonzalez' Methodology is not Sufficiently Reliable as Determined by the Type of Inquiry Mandated in *Daubert*

Mr. Gonzalez' Affidavit does not contain an adequate basis and/or sufficient reasons for the opinions which he intends to express and does not contain all of the facts or data he considered.   As is the case with Mr. Arce, only vague references to unspecified "site inspections", "moisture reads", "thermal imaging", "visual inspections" and "observable conditions", with no information whatsoever as to if and when Mr. Gonzalez actually performed inspections of the subject property, what areas of the subject property were inspected and when, or what  type of testing or methodology was employed and by whom. And although there appears to be some raw data attached to

the Affidavit[5] this is the same data attached to Mr. Arce's "Affidavit" and has not been analyzed by either of the supposed experts. S*ee **[D.E. #50]**, pgs. 119-207*

It follows, like Mr. Arce, given the failure of any reliable opinion, or *any* opinion being proffered, it is impossible to ascertain whether Mr. Gonzalez' methodology, theory or technique (to the extent there were any) have been tested or are capable of being tested; have been subjected to peer review and publication; have been generally accepted in the relevant scientific community; or whether there is a known or potential error rate. *Chapman*, 766 F. 3d at 1305.

Further, the Affidavit of Alain Gonzalez, attached to Plaintiffs' Supplemented List, impermissibly bootstraps the so-called conclusions and opinions of Sergio Arce which were

---

[5] There is also a Budget/Proposal attached to the Affidavit*, which is not specifically addressed by Mr. Gonzalez and which is dated *after* the expert disclosure deadline.  *See **[D.E. #50]**, page 118.*

previously stricken by the Court, then refiled by Plaintiffs in identical form.  Plaintiffs cannot disguise these conclusions and opinions as "supplements".  *See Abrams v. Ciba Specialty Chemicals Corp.*, 2010 WL 779283 *4 (S.D. Ala. 2010)("Such bootstrapping of an undisclosed expert witness's opinions into the reports and testimony of another is plainly improper, where the disclosed expert is treating those opinions as his own (rather than simply relying on information from another expert as underlying data from which he formulates his own expert opinions").  Consequently, and in light of the substantial analytical leap which must be made between the facts and Mr. Gonzalez' opinion, his testimony should be excluded.

      c.    *Helpfulness* – Testimony of Alain Gonzalez Would Not Assist the Trier of Fact in Understanding the Evidence or Determining a Fact at Issue

As previously stated, Mr. Gonzalez is a general contractor and not a licensed engineer, and by his own admission he is not an expert as to the cause, scope or value of the loss[6].  *See **[D.E. #50], pg. 109**.* Mr. Gonzalez' testimony does not concern matters that are beyond the understanding of the average lay person especially because he can only offer testimony as a lay person, at best.  *Frazier*, 387 F. 3d at 1262.  *See also King v. Cessna Aircraft Co.*, 2010 WL 1980861, *5 (S.D. Fla. 2010).  Mr. Gonzalez, as a proffered expert will not assist the trier of fact but rather will confuse the trier of fact.  *Id.* at 1262-1263.

Accordingly, as presented in his "Affidavit" attached to Plaintiffs' Supplemented List, Mr. Gonzalez' proffered expert testimony would be of no assistance to the jury in understanding the evidence or determine a fact at issue in this case and must be stricken and the proffered expert testimony be excluded.

      **iii.**    **Alfredo Brizuela Must Be Stricken and/or Excluded as an Expert**

---

[6] Despite being a General Contractor, Mr. Gonzalez did not generate an estimate for damages as a result of Hurricane Irma at all whether based upon the scope of an engineer or not.

a.    *Qualification* - Alfredo Brizuela is Not Qualified to Testify Regarding the Subject of the Testimony

As demonstrated by his proffered testimony in his own Affidavit, **dated after the January 28, 2019 expert witness disclosure deadline** [**emphasis** supplied], despite being a licensed engineer, Alfredo Brizuela is not qualified to act as an expert in this case. Paragraph 10 of Mr. Brizuela's "Affidavit" states as follows:

> Although for purposes of litigation I'm commonly and independently relied upon as an expert as to cause, scope and value of damages in association with a hurricane, **in the matter at hand it was concluded that it would serve the interest of all to work in combination with the findings of** Sergio Arce, a licensed public adjuster, and Alain Gonzalez, a general contractor, [**emphasis** supplied] *See **[D.E. #50]**, pgs. 209- 210*

Accordingly, like Mr. Arce and Mr. Gonzalez, here Mr. Brizuela like them cannot qualify on his own as an expert as to the "cause, scope and value" of the cause of the damages being sought by the Plaintiffs and any quantification of same. *See **[D.E. #50]**, pg. 2*

b.    *Reliability* - Alfredo Brizuela's Methodology is not Sufficiently Reliable as Determined by the Type of Inquiry Mandated in Daubert

Mr. Brizuela's report does not contain an adequate basis and/or sufficient reasons for the opinions which he intends to testify to at the trial of this case and does not contain all of the facts or data he considered.  As is the case with Mr. Arce and Mr. Gonzalez[7], aside from vague references to unspecified "site inspections", "moisture reads", "thermal imaging", "visual inspections" and "observable conditions", there is no information confirming whatsoever if Mr. Brizuela actually went to the subject property let alone performed any inspections of any part of the subject property or when any possible inspection took place, or what type of testing or methodology was employed and by whom.  And although there

---

[7] At this point the Court has surely observed the copy-and-paste similarities among all three (3) of the Affidavits discussed herein.

appears to be some raw data attached to the Affidavit[8], this is the same data attached to Mr. Arce's "Affidavit" and Mr. Gonzalez' Affidavit, and has not been analyzed or discussed in any of the Affidavits. *See **[D.E. #50]**, pgs. 268-356.*  As such, it is impossible to ascertain whether Mr. Brizuela's methodology, theory or technique (to the extent there were any) have been tested or are capable of being tested; have been subjected to peer review and publication; have been generally accepted in the relevant scientific community; or whether there is a known or potential error rate. *Chapman*, 766 F. 3d at 1305.

Likewise, as with the Affidavit of Alain Gonzalez, the Affidavit of Alfredo Brizuela, attached to Plaintiffs' Supplemented List, also impermissibly bootstraps the so-called conclusions and opinions of Sergio Arce, which were stricken by the Court, then refiled by Plaintiffs in identical form and remain insufficient to withstand scrutiny by this Court. Plaintiffs cannot disguise these conclusions and opinions as "supplements".  *See Abrams v. Ciba Specialty Chemicals Corp.*, 2010 WL 779283 *4 (S.D. Ala. 2010)("Such bootstrapping of an undisclosed expert witness' opinions into the reports and testimony of another is plainly improper, where the disclosed expert is treating those opinions as his own (rather than simply relying on information from another expert as underlying data from which he formulates his own expert opinions)").  Consequently, and in light of the substantial analytical leap which must be made between the facts and Mr. Brizuela's opinion, his proffered testimony must be excluded.

    c.    *Helpfulness* - Alfredo Brizuela's Testimony Would Not Assist the Trier of Fact in Understanding the Evidence or Determining a Fact at Issue

As previously stated, Mr. Brizuela's sworn testimony in his own Affidavit demonstrates that, standing alone, he is not an expert as to the cause, scope and value of

---

[8] There is an August 21, 2018 "Statement of Inspection" *see **[D.E. #50]**, pgs. 250-267,* which is not addressed or explained in any manner in Mr. Brizuela's Affidavit, and which, on its face, appears to only pertain to the "bridge structure" at the Insured Property.

the loss. *See [D.E. #50], pgs. 209-210.*  His opinions and findings, in addition to being impermissibly bootstrapped to that of Sergio Arce, are premised upon methodology where an engineer relies on ostensible opinions of a public adjuster and a general contractor who circle back and rely on Mr. Brizuela.  How can this be helpful to the trier of fact?  Simply put, it does not and therefore Mr. Brizuelas proffered expert testimony must be excluded. *Frazier*, 387 F. 3d at 1262.  *See also King v. Cessna Aircraft Co.*, 2010 WL 1980861, *5 (S.D. Fla. 2010).  *Id.* at 1262-1263.

Accordingly, as presented in his Affidavit attached to Plaintiffs' Supplemented List, Alfredo Brizuela's opinions would be of no assistance to the jury in understanding the evidence or determine a fact at issue in this case.

### C.    Plaintiffs' Failure to Comply with Fed. R. Civ. P. 26 & 37 and this Court's Scheduling Order Warrant Striking Experts

Federal Rule of Civil Procedure 26(a)(2) requires a party to disclose the identity of witnesses "retained or specially employed to provide expert testimony in the case. *Fed. R. Civ. P. 26(a)(2).*  A written report – signed by the witness – must accompany the disclosure of an expert witness. *Id.* The written report must contain: (1) a complete statement of opinions the witness will express and the basis and reasons for them; (2) the facts of data considered by the witness in forming them; (3) any exhibits that will be used to summarize or support them; (4) the witness' qualifications, including a list of all publications authored in the previous 10 years; (5) a list of all other cases in which during the previous 4 years, the witness testified as an expert at trial or by deposition; and (6) a statement of the compensation to be paid for the study and testimony in the case. *Fed. R. Civ. P. 26(a)(2)(B)(i-vi).*  In keeping with these requirements, courts in this District have held that a "full written and signed report is required from an expert who is 'retained or specially employed to provide expert testimony in the case…'" *Morton's of Chicago/Miami, LLC v.*

*1200 Castle 100-A, Inc.*, 2014 WL 11944282 (S.D. Fla. 2014)(quoting *In re Denture Cream Prods., Liab. Litig.*, 2012 WL 5199597, at *4 (S.D. Fla. 2012)).  *See also Calhoune v. Ford Motor Co.*, 2018 WL 7287871 (S.D. Fla. 2018).  An expert witness has a duty to supplement his or her report "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the parties during the discovery process or in writing." *Fed. R. Civ. P. 26(e)(1)(A)*.

If a party fails to provide information as required by Rule 26(a) or (e), the sanction of exclusion is automatic and mandatory, i.e., the party is not allowed to use that information to supply evidence at a trial, unless the sanctioned party can show that its violation was either substantially justified or harmless."  *Fed. R. Civ. P. 37(c)(1)*.  *Cooper v. Southern Co.*, 390 F. 3d 695, 728 (11th Cir. 2004)(explaining that compliance with Rule 26's expert disclosure requirements is "not merely aspirational"), *overruled on other grounds, Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006); *Mitchell v. Fort Motor Co.*,, 318 F. App'x 821, 825 (11th Cir. 2009)(affirming order striking expert for not properly disclosing the scientific bases for his expert opinion in a timely manner); *United States v. Batchelor-Robjohns*, 2015 WL 1761429, at *2 (S.D. Fla. 2005)(granting motion to strike expert's report and excluding expert from testifying and explaining that "Rule 37(c)(1) requires absolute compliance with Rule 26(a), in that it mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or substantially justified.")(internal quotations omitted). "Exclusion is also appropriate pursuant to Rule 16(b), which 'authorizes the district court to control and expedite pretrial discovery through a scheduling order' and which gives the court 'broad discretion to preserve the integrity and purpose of the pretrial order,' including the exclusion of evidence as a means of enforcing the pretrial order."  *Buxton v. Lil' Drug Store Prods. Inc.*, 2007 WL  2254492, at *7 (S.D.

Miss. 2007), *aff'd*, 294 F. App'x 92 (5th Cir. 2008)(quoting *Geiserman v. MacDonald*, 893 F. 2d 787, 790 (5th Cir. 1990)).

In the *case sub judice*, all three (3) of the purported "reports" fall woefully short of satisfying the requirements of Rule 26 of which compliance is "not merely an aspiration as the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise." *Calhoune*, 2018 WL 7287871 at *2.

### i.     The Unsigned Affidavit and Failure of All Affidavits to be Detailed and Complete

First, the Affidavit of Mr. Arce filed on two (2) occasions by the Plaintiffs and the subject of two (2) separate Motions to Strike filed by the Defendant, is unsigned and is in thereby clear violation of Fed. R. Civ. P. 26(a)(2)(B).  Second, all three (3) affidavits do not equate to a report of any sort and certainly are not in compliance with the requirements of Fed. R. Civ. P. 26(a)(2)(B)(i–vi).  The Affidavits are uninformative, boilerplate renditions which offer nothing to distinguish the testimony of one expert from another and wholly fail to disclose, in any intelligible way, the facts and rationale which underlie the opinions expressed.   *Upsher–Smith Lab., Inc. v. Mylan Lab., Inc.*, 944 F.Supp. 1411, 1439–40 (D.Minn.1996). Finally, not one of these professed experts even say they *are an expert*  in this case but quite the contrary they all concede they are not experts, have no opinion and are working off of the others opinions – it's like listening to the Aboott and Costello comedy routine Who's on First?

Accordingly, all three (3) Affidavits must be stricken and the witnesses should be barred from testifying as to the proffered testimony contained therein.

### ii.     Plaintiffs Late Disclosure is Not Harmless or Justified

Both Mr. Gonzalez' February 3, 2019 Affidavit and March 8, 2019 Budget Proposal and Mr. Brizuela's February 6, 2019 Affidavit were disclosed for the first time by Plaintiffs in

their Supplemented List and *are all dated after January 28, 2019* – the expert witness disclosure deadline set forth in the Court's October 2, 2018 Scheduling Order. *See* **[D.E. #50], pgs. 109-356**. This Court has broad discretion to order exclusion of these expert witnesses, particularly since Plaintiffs violated the expert discovery rules in every way possible and cannot possibly show that their violation was either substantially justified or harmless. Plaintiffs do not assert any substantially justifiable reason for the late disclosure nor do the Plaintiffs shown that their belated disclosure was harmless.  The instant action is not a case in which a belated disclosure is harmless.  *Ellison v. Windt*, 2001 WL 118617, \*1 (M.D. Fla. 2001)(belated service of expert report harmless when defendant had "ample time remaining in the discovery period to depose" the named expert).   Plaintiffs' conduct prevented Defendant from investigating the content of the totality of its purported experts' opinions through the formal discovery process and precluded Defendant form seeking other expert witnesses to potentially rebut any of the testimony. As a result, Defendant could not efficiently begin to defend against Plaintiffs' generalized claim for damages.   Plaintiffs cannot put forth any substantial justification for their conduct in this regard.

Thus, Plaintiffs belated disclosure violated the Court's Scheduling Order and does not escape exclusion under pursuant to Fed. R. Civ. P. 37(c)(1) and thus any proffered expert testimony must excluded by this Court.

### iii.    Plaintiffs' Expert Affidavits are Not Supplemental Disclosures

Plaintiffs attempt to label their late disclosures as "supplemented though the information necessary to Mr. Gonzalez and Mr. Brizuela in order to formulate the ostensible opinions was made available to both of them by Plaintiffs well in advance of the January 28, 2019 deadline. The fact that Mr. Gonzalez' and Mr. Brizuela's reports were not adequate and/or complete by the deadline does not now permit Plaintiffs to advance their opinions through supplementation pursuant to Rule 26(e). More specifically, the Affidavits of Alain

Gonzalez and Alfredo Brizuela are not "supplements" as contemplated by Rule 26(e)(1)(A). *Goodby's Creek, LLC v. Arch Ins. Co.*, 2009 WL 1139575 (M.D. Fla. 2009).  A party cannot use the duty of supplementation to add to the expert's opinions. *Id. See also Collins v. US*, 2010 WL 4643279 (M.D. Fla. 2010).  Plainly, under this standard Plaintiffs cannot use the duty of supplementation to add to the opinions of the experts they sought to disclose.

## II.    <u>CONCLUSION</u>

Plaintiffs' disclosed experts are far from qualified to render bona fide accepted opinions accepted in their respective industries and cannot meet the *Daubert* standards to be accepted by this Court to testify at trial.  Plaintiffs have failed to comply with Fed.R.Civ. P. 26(a), 26(e) and 37, the Court's Scheduling Order **[D.E. #21]** and the Court's June 13, 2019 Order **[D.E. #94]**. Consequently, the Affidavits should be stricken and/or the proffered testimony must be excluded and/or precluded from trial.

WHEREFORE, Defendant, ROCKHILL INSURANCE COMPANY, respectfully requests the Court to enter an Order granting the instant Motion, and awarding any further relief deemed just and proper under the circumstances.

### <u>Certification of Conference pursuant to Local Rule 7.1</u>

Pursuant to Local Rule 7.1, on <u>June 29, 2019</u>, counsel for the movant has conferred with all parties who may be affected by the relief sought in the motion, by exchanging electronic correspondence, in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

### <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on **5th day of July, 2019**, the undersigned electronically filed the foregoing document with the clerk of the Court using CM/ECF. The undersigned also certifies that the foregoing document is being served this day to: Font & Nelson, PLLC, 200 S. Andrews Avenue, Suite 501, Fort Lauderdale, Florida 33301

(jfont@fontnelson.com;          afriedman@fontnelson.com;          bfischer@fontnelson.com;

fnelson@fontnelson.com;         gvega@fontnelson.com;          jproffitt@fontnelson.com;

jwilds@fontnelson.com;  nkronen@fontnelson.com;  pleadings@fontnelson.com)**;** either via

transmission of Notices of Electronic Filing generated by CM/ECF or in some other

authorized manner for those counsel or parties who are not authorized to receive

electronically Notices of Electronic filing.

                        **LEVY LAW GROUP**

                        /s/Lauren D. Levy_____
                        LAUREN D. LEVY, ESQ.
                        Florida Bar No.: 0116490
                        PAULA LEVY PARKES, ESQ.
                        Florida Bar No.: 0117031
                        3399 Ponce de Leon Boulevard, Suite 202
                        Coral Gables, Florida 33134
                        Telephone: (305) 444-1500
                        Facsimile: (305) 503-9295
                          *Attorney for Defendant/Counter-Plaintiff*