UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.1:18-cv-23576-KMW

AM GRAND COURT LAKES LLC
& AM 280 SIERRA DRIVE LLC,

    Plaintiffs/Counter-Defendants,

v.

ROCKHILL INSURANCE COMPANY,

    Defendant/Counter-Plaintiff.

_____/

**DEFENDANT/COUNTER-PLAINTIFF'S REPLY TO PLAINTIFFS'/COUNTER-DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION TO STRIKE AND *DAUBERT* MOTION TO EXCLUDE EXPERTS AND INCORPORATED MEMORANDUM OF LAW**

Defendant/Counter-Plaintiff, ROCKHILL INSURANCE COMPANY ("Defendant" or "Rockhill"), by and through its undersigned counsel and pursuant to Local Rule 7.1 (c), files its Reply to Plaintiffs'/Counter-Defendants' Response in Opposition to Motion to Strike and *Daubert* Motion to Exclude Experts and Incorporated Memorandum of Law **[D.E. #116]**, stating as follows:

## I. INTRODUCTION

As the Court is aware, the instant lawsuit arises out of an alleged September 10, 2017 Hurricane Irma loss and damages to certain real property located at 280 Sierra Drive, North Miami, Florida 33179 (the "Insured Property") which the Plaintiffs, AM GRAND COURT LAKES LLC and AM 280 SIERRA DRIVE LLC. (the "Plaintiffs") contend are covered under an insurance policy they entered into with Defendant, Policy Number RCPPRU000002 (the "Policy"), with effective dates November 7, 2016 through November 7, 2017.

On March 12, 2019, Plaintiffs filed a Supplemented Expert Witness List **[D.E. #50]** (the "Expert Disclosures") setting forth three (3) professed experts, to wit: Sergio Arce, Alfredo Brizuela and Alain Gonzalez, and attaching the (strikingly similar) "Affidavits" of these gentlemen, which Plaintiffs intend to utilize as expert reports in this case. See **[D.E. #50]**, pgs. 1- 2.

On July 5, 2019, Defendant filed its Motion to Strike and *Daubert* Motion to Exclude Plaintiffs' Experts and their proffered testimony and Incorporated Memorandum of Law **[D.E. #109]** (the "*Daubert* Motion"). On July 19, 2019, Plaintiffs filed their Response in Opposition to Defendant's Motion to Strike and *Daubert* Motion to Exclude Plaintiffs' Experts and Incorporated Memorandum of Law **[D.E. #116]** (the "Response").

For reasons more particularly set forth herein, Plaintiffs' Response is without merit and the ostensibly disclosed experts should be stricken and/or their proffered expert testimony be excluded.

## II. THE AVOWED "CORRESPONDING DISCLOSURES" SHOULD NOT BE CONSIDERED TO BE PART OF THE PLAINTIFFS' EXPERTS SO-CALLED "REPORTS"

In their Response, Plaintiffs first argue that Defendant has "mislead" this Court in the *Daubert* Motion by failing to refer to the unorganized mass of materials they produced on a thumb drive on the evening of March 13, 2019, which Plaintiffs now suddenly and conveniently refer to as "corresponding disclosures", consisting of "well over 12,000 photos that in native form memorialized the conditions in question and the associated diagnostic testing as further discussed below; weather data; repair records; the pre-suit public adjusters photos, estimate, reports, etc.". See **[D.E. #116]**, pg. 3.

Plaintiffs also rely on these purported "corresponding disclosures" in subsequent arguments that their "experts": (A) "fully set forth all facts, data, principles and methods that were utilized to formulate their opinions" by way of producing "approximately 13,000 pages in corresponding documentary disclosures"; and, (B) "fully complied with the required disclosures" by way of delivering the thumb drive "to not only serve reflective of the conditions that were found to be consistent with the cause of loss, but also to reveal the findings of the various diagnostic tests that were relied upon to formulate their opinions. See *[D.E. #116]*, pg. 8-10.

However, the unorganized mass of materials contained on Plaintiffs' thumb drive[1], which were produced in conjunction with Plaintiffs' (out-of-time) Response to Defendant's Expert Request for Production, **are not referenced anywhere in the feigned Affidavits** and, aside from vague references to unspecified "site inspections", "moisture reads", "thermal imaging", "visual inspections" and "observable conditions", there are **absolutely no specific correlations drawn between these materials and the findings, if any at all** [**emphasis** supplied]. See *[D.E. #50]*. As such, Plaintiffs' attempt to label these items as "corresponding disclosures" is nothing more than a disingenuous but transparent last-ditch effort to impermissibly buttress their incomplete, insufficient and non-compliant "reports" with additional information, and Plaintiffs' statement that "Defendant is misleading this Court by failing to reference these so-

---

[1] Interestingly, Plaintiffs later claim that these ostensibly declared experts "worked together and relied upon exhaustive diagnostic testing that was **fully memorialized and incorporated into** a collection of well over 12,000 photos**,** and **an exhaustive list of reasonably relied upon information and data** which consisted of, amongst other things, the following: over 12,000 photos that in native form memorialized the conditions in question and the associated diagnostic testing; weather data; repair records; the pre-suit public adjusters photos, estimate, reports, etc." [**emphasis** supplied]. See *[D.E. #116]*, pg. 15. However, as the Court may recall from prior proceedings, Plaintiffs were ordered to provide such a list to defense counsel in advance of the Joint Pretrial Stipulation being filed in the instant case but failed to do so, despite request.

called "corresponding disclosures" should not be well-taken by the Court. *See **[D.E. #116]**, pg. 3.*

### III. PLAINTIFFS ARE CHARGED WITH LAYING A PROPER FOUNDATION FOR THE EXPERTS THEY HAVE DISCLOSED AND NEITHER TESTIMONY OR DEPOSITIONS SHOULD BE NECESSARY TO DECIPHER THEIR METHODOLOGY OR OPINIONS

Additionally, in the Response, Plaintiffs suggest that Defendant was somehow required to address and/or remedy the deficiencies in Plaintiffs' Expert Disclosures, and that it was incumbent upon Defendant to flesh-out the non-existent methodology and/or opinions through depositions. *See **[D.E. #116]**, pg.10-11.* ("If the Defendant had any remaining questions or uncertainties in relation to the Plaintiffs' experts' reports/affidavits/disclosures, then those issues should have been addressed through a specific and substantive predicate conferral with Plaintiffs' counsel, or as one would expect if the disclosure concerns were genuine and truly subject to being substantively adjudicated, by way of deposing the Plaintiffs' experts"). However, as the party offering the expert testimony, it is Plaintiffs who carry the burden of laying the proper foundation for its admission by a preponderance of the evidence. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999*). See also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion . . ."). In addition, consistent with the rules and decisional law of this Court, the Seventh Circuit noted:

> Rule 26(a) expert reports must be "detailed and complete." A complete report must include the substance of the testimony which an expert is expected to give on direct examination together with the reasons therefor. The report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources... Expert reports

4

> must include "how" and "why" the expert reached a particular result, not merely the expert's conclusory opinions... The "incentive for total disclosure" is the threat that the expert not disclosed in accordance with the rule can be excluded pursuant to Rule 37(c)(1).

*Salgado v. General Motors Corp.*, 150 F.3d 735, n. 6 (7th Cir. 1998). Another district court appropriately noted:

> The interests served by requiring the disclosure of expert opinions is self evident. It is to prevent unfair surprise at trial and to permit the opposing party to prepare for the expert's cross examination. By "locking" the expert witness into what Fed. R. Civ. P. 26(a)(2)(B) calls "a complete statement of all opinions to be expressed and the basis and reasons therefore," the opposing party knows exactly what she is facing and can decide whether to take the deposition of the expert and how to prepare for cross examination and rebuttal.

*Coles v. Perry*, 217 F.R.D. 1, 4 (D.D.C. 2003).

### IV. PLAINTIFFS HAVE FAILED TO REFUTE OR ADDRESS MANY OF DEFENDANT'S KEY ARGUMENTS IN THE *DAUBERT* MOTION

Significantly, Plaintiffs have failed to refute or meaningfully address many of Defendant's key arguments contained in the *Daubert* Motion. These include, but are not necessarily limited to:

    A.    Defendant's arguments that the methodology of the three individuals disclosed as proclaimed experts is not sufficiently reliable and would not assist the trier of fact in understanding the evidence or determining a fact at issue, pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).  *See **[D.E. #109]**, pg. 7-8, 1-13.*

    B.    The fact that Plaintiffs re-filed the same *unexecuted* Affidavit of Sergio Arce **[D.E. #44-1]** that was stricken by this Court, which states

5

that his opinions and findings were not complete when the Affidavit was filed. *See **[D.E. #109]**, pg. 7-8.*

C. The references in all three (3) of the Purported Experts' Affidavits to unspecified "site inspections", "moisture reads", "thermal imaging", "visual inspections" and "observable conditions", which do not lead to any conclusion that they actually performed any inspections or testing or employed any methodology to determine the scope and cause of the purported damages. *See **[D.E. #109]**, pg. 8, 10, 12.*

D. The fact that the photographs attached to Mr. Arce's Affidavit are not analyzed or discussed anywhere by anyone. *See **[D.E. #109]**, pg. 8, FN4.*

E. The fact that numerous documents contained in the Expert Disclosures were dated after the expert disclosure deadline, without any explanation or justification for their tardiness. *See **[D.E. #109]**, pg. 9, 10, 12, 17.*

F. Defendant's argument that Plaintiffs' Expert Affidavits are Not Supplemental Disclosures pursuant to Fed. R. Civ. P. 26(a)(2)(B). *See **[D.E. #109]**, pg. 17-18.*

G. The impermissible bootstrapping of Mr. Brizuela's and Mr. Gonzalez' "opinions". *See **[D.E. #109]**, pg. 10, 11, 13, 14.*

H. The specific enumerated requirements of Fed. R. Civ. P. 26(a)(2)(B), with which Plaintiffs' Expert Disclosures fail to comply. *See **[D.E. #109]**, pg. 14-16.*

Instead of addressing these arguments, Plaintiffs make superfluous and irrelevant arguments which are in no way responsive to Defendant's *Daubert* Motion, such as their claim that Defendant failed to perform necessary diagnostic testing on the Insured Property. See **[D.E. #116]**, *pg. 3-5.* Similarly, Plaintiffs inexplicably utilized almost four (4) pages of its Response to cut-and-paste the Affidavit of Alfredo Brizuela as part of their argument, but this in no way refutes the portion of Defendant's *Daubert* Motion which specifically addresses the deficiencies of this very same Affidavit as an "expert report". See **[D.E. #116]**, *pg. 5-8*[2].

### V. PLAINTIFFS' ARGUMENT AS TO SERGIO ARCE'S QUALIFICATION AS AN EXPERT IS WHOLLY IMPROPER AND UNPERSUASIVE

In the last section of their Response, Plaintiffs focus on trying to rehabilitate Sergio Arce as a qualified expert in this case. First, Plaintiffs cite to an single-page Verdict Form from a completely unrelated state court action (where the plaintiffs were also represented by Font & Nelson, PLLC) which lacks predicate, attached as an improper exhibit to the Response, claiming that this document somehow demonstrates how Mr. Arce's "expert" opinion "controverted the insurer's expert engineer's opinion that the damages at issue amounted to $17,000-as opposed to the $154,000 attested to by Mr. Arce, and awarded by the jury". See **[D.E. #116]**, *pg. 17.* Obviously, this document, standing alone, has zero probative value with regard to Mr. Arce's experience as an expert. Plaintiffs then proceed to paraphrase numerous portions of Mr. Arce's Affidavit which deal with his background and supposed qualifications, emphasizing Mr. Arce's claim that he is "commonly retained to serve as an expert for

---

[2] Because a reply memorandum must be strictly limited to rebuttal of matters raised in the memorandum in opposition without re-argument of matters covered in the movant's initial memorandum of law, Defendant will not re-address the deficiencies of Mr. Brizuela's Affidavit at this juncture. *See Local Rule 7.1(c)..*

purposes of litigation". See **[D.E. #116]**, *pg. 17-19.* However, Mr. Arce's Curriculum Vitae, provided as part of Plaintiffs' Expert Disclosures, does not include "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition", in violation of Fed. R. Civ. P. 26(a)(2)(B)(v) See **[D.E. #50]**. Further, Mr. Arce himself concedes he is not acting as an expert in this case.

## VI.   CONCLUSION

Plaintiffs Response in Opposition to Defendant's Motion to Strike and *Daubert* Motion to Exclude Plaintiffs' Experts and Incorporated Memorandum of Law fails to address many of the key arguments advanced by Defendant in the *Daubert* Motion, demonstrating that Plaintiffs seem to recognize the glaring and unjustifiable deficiencies in their Expert Disclosures.  Instead, they argue that "[a] less-than-perfect expert opinion may still be admitted, even if it contains gaps", and that such testimony must be excluded "'only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury". *See* **[D.E. #116]**, *pg. 14*(citing *In re Trasylol Prods. Liab. Litig.*, 2010 WL 1489793, at *6 (S.D. Fla. 2010)). Yet, Plaintiffs' Expert Disclosures contain chasms – not gaps, and that the opinions of these professed experts are so fundamentally unsupported as to render all of them of no assistance to the jury in the instant case.  Consequently, all three (3) disclosed self-proclaimed experts should be stricken and their proffered expert testimony should be excluded.

WHEREFORE, Defendant, ROCKHILL INSURANCE COMPANY, respectfully requests the Court to enter an Order granting its Motion to Strike and *Daubert* Motion to Exclude Plaintiffs' Experts **[D.E. #109]** and awarding any further relief deemed just and proper under the circumstances.

Case No.1:18-cv-23576-KMW

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on **July 26th, 2019**, the undersigned electronically filed the foregoing document with the clerk of the Court using CM/ECF. The undersigned also certifies that the foregoing document is being served this day to: Font & Nelson, PLLC, 200 S. Andrews Avenue, Suite 501, Fort Lauderdale, Florida 33301 (jfont@fontnelson.com; afriedman@fontnelson.com; bfischer@fontnelson.com; fnelson@fontnelson.com; gvega@fontnelson.com; jproffitt@fontnelson.com; jwilds@fontnelson.com; nkronen@fontnelson.com; pleadings@fontnelson.com)**;** either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

**LEVY LAW GROUP**

/s/Lauren D. Levy
LAUREN D. LEVY, ESQ.
Florida Bar No.: 0116490
PAULA LEVY PARKES, ESQ.
Florida Bar No.: 0117031
3399 Ponce de Leon Boulevard, Suite 202
Coral Gables, Florida 33134
Telephone: (305) 444-1500
Facsimile: (305) 503-9295
*Attorney for Defendant/Counter-Plaintiff*