UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-23576-WILLIAMS/TORRES

AM GRAND COURT LAKES, LLC,
and AM 2800 SIERRA DRIVE, LLC

       Plaintiffs,

v.

ROCKHILL INSURANCE COMPANY,

       Defendant.
_____/

**ORDER ON DEFENDANT'S MOTION TO STRIKE**

       The matter before this Court is a Motion to Strike and Exclude the Testimony of Plaintiff's Proffered Experts filed by Defendant ROCKHILL INSURANCE COMPANY ("Defendant") on July 5, 2019. [D.E. 109]. Plaintiff responded in opposition to the Motion on July 19, 2019 [D.E. 116], and Defendant's Reply followed on July 26. [D.E. 118]. The Honorable Judge Kathleen M. Williams then referred the Motion to the undersigned for disposition on August 13, 2019. [D.E. 121]. Following our review of each of the challenged expert's reports, in addition to the parties' briefing materials and the governing legal authorities, we hereby **ORDER** the Motion be **GRANTED in part** and **DENIED in part.**

       *I.    FACTUAL BACKGROUND*

       This action involves a dispute over insurance coverage for roof damage allegedly suffered at a Miami-arear property after Hurricane Irma struck South

Florida in September of 2017. [D.E. 1]. The governing Scheduling Order required Plaintiff to disclose the identity of its experts, expert summaries and reports by January 28, 2019. [D.E. 21]. It did so on that date, listing three experts: (1) Sergio Arce; (2) Alfredo Brizuela; and (3) Alain Gonzalez. [D.E. 44]. Plaintiff only provided supporting documentation in the form of an affidavit prepared by Arce and the resumes of both Arce and Brizuela; no affidavits from the latter two individuals were included. *Id.*

On March 5, 2019, the Court struck Plaintiff's expert witness disclosures, finding that Plaintiff's submission failed to comply with Rule 26 of the Federal Rules of Procedure. [D.E. 49]. The Order gave Plaintiff seven days to cure the deficiencies, and Plaintiff filed a "supplemental" witness list on March 12 in compliance with that Order. [D.E. 50]. The disclosures listed the same three individuals as experts, but this time the disclosure included from all three. *Id.* Defendant once again moved to strike the supplemental filing, arguing that each failed to comply with the expert disclosure requirements of Rule 26 and arguing that the "affidavits" filed by each expert did not qualify as a "report" under that Rule. [D.E. 68]. The Honorable Judge Kathleen M. Williams denied Defendant's Motion on June 13, 2019, but gave Defendant leave to file *Daubert* motions to strike should Plaintiff wish to do so.

That Motion is now before this Court. [D.E. 109]. Defendant asks that we strike the testimony of each of Plaintiff's proffered experts, arguing for a third time that the disclosures violate Rule 26 and that exclusion is therefore necessary under Rule 37. *Id.* Defendant also contends that our role as "gatekeeper" requires that each of the

2

expert's opinions be deemed inadmissible because the individuals are not qualified to offer the opinions Plaintiff intends to elicit at trial, and that each conclusion drawn is unreliable and unhelpful. *Id*. Plaintiff, in opposition, argues that its disclosures comply with Rule 26(a)(2) and that its supplemental disclosures complied with this Court's March 5 Order. [D.E. 76]. Plaintiffs also argue that each expert is qualified, helpful and supported their conclusions utilizing reliable methodology. *Id.*

## II.     LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence, as explained by *Daubert* and its progeny, governs the admissibility of expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). Rule 702 states that an expert, qualified as such by knowledge, skill, experience, training, or education, may testify in the form of an opinion if: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

The district court's role in determining whether an expert may testify is that of a "gatekeeper." *Daubert*, 509 U.S. at 589. In this role, we must "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." *Id*. In doing so, we are afforded broad discretion in deciding whether to admit or exclude an expert's proffered testimony. *See Kumho Tire v. Carmichael*, 526 U.S. 137, 152 (1999).

The *Daubert* Court noted that "[t]he inquiry envisioned by Rule 702 is…a flexible one," *Daubert*, 509 U.S. at 594, and in *Kumho*, the Court stated that our gatekeeping obligation extends not only to scientific testimony, but to all expert testimony. *Kumho*, 526 U.S. at 147.

The Eleventh Circuit has set forth a three-pronged approach to the party seeking to qualify a witness as an expert. *See Rink*, 400 F.3d at 1291-92. That approach requires the court to inquire whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or determine a fact in issue. *Id*. The party offering an expert carries the burden of satisfying each of these elements by a preponderance of the evidence. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion.").

### III.   ANALYSIS

#### A.   *Disclosure Requirements Under Rule 26(a)(2)*

We will first address Defendant's argument that each of the expert's reports fails to comply with Rule 26 of the Federal Rules of Civil Procedure. This particular challenge invokes Rule 26(a)(2), which states:

**(2)** *Disclosure of Expert Testimony.*

**(A)** *In General.* In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705.

**(B)** *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

**(i)** a complete statement of all opinions the witness will express and the basis and reasons for them;

**(ii)** the facts or data considered by the witness in forming them

**(iii)** any exhibits that will be used to summarize or support them;

**(iv)** the witness's qualifications, including a list of all publications authored in the previous 10 years;

**(v)** a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

**(vi)** a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(A)-(B). Defendant claims that we must strike each expert's "report" because the submitted affidavits cannot be considered such a report as required by Rule 26(a)(2). Defendant also argues that the inclusion of affidavits prepared by Brizuela and Gonzalez after the January 28 deadline to exchange expert witness violated this Court's Scheduling Order.

We disagree with both arguments. First, we reject Defendant's claim that the opinions do not comply with the requirements of Rule 26(a)(2). Our review of each

"report" – even if provided to Rockhill in affidavit form – provides the information required under that Rule. *See OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1361 (11th Cir. 2008) (finding expert's affidavit met all requirements of Rule 26(a)(2) despite not being deemed a "report"). Although it appears that each affidavit is nearly identical, we cannot ignore that each provides the information mandated by Rule 26(a)(2), including the witness's final opinions, the facts and information considered before reaching those conclusions, and the respective expert's qualifications. The similarity of each may serve as fodder for rigorous cross-examination at trial, but it does not, in and of itself, render the opinions wholly inadmissible under *Daubert*. *See Sorrels v. NCL (Bahamas), Ltd.*, 796 F.3d 1275, 1285 (11th Cir. 2015) ("Cross-examination and the presentation of contrary evidence 'are the traditional and appropriate means of attacking shaky but admissible evidence.'") (quoting *Daubert*, 509 U.S. at 596).

The second argument is likewise rejected. Defendant claims that Plaintiff's March 12, 2019 "supplementation" of its disclosure violated Judge Williams' Scheduling Order because it included additional affidavits prepared by Gonzalez and Brizuela that were not provided on January 28. This argument flatly ignores this Court's Order from March 5, where we gave Plaintiff leave to amend the disclosures and cure those deficiencies; Plaintiff's supplementation, then, was simply its effort to comply with that Order, and we find no issue with doing so.

Having disposed of this procedural argument, we now move to the substantive merits raised in Defendant's Motion to Strike as to each individual expert.

### B. <u>Manny Arce</u>

Arce, in his affidavit, offers three opinions: (1) the roof of the facility suffered "catastrophic failure"; (2) the damage was caused by Hurricane Irma; and (3) partial repairs at the facility have not cured the roofing issues caused by the storm. For the reasons stated below, we find that Arce may testify as to the extent of damages suffered by the facility, but that he is not qualified to render opinions related to causation.

#### 1. *Qualifications*

First, we turn to Mr. Arce's qualifications, which Defendant challenges here. An expert may be qualified to testify in multiple ways – through knowledge, skill, experience, training, or education – but is not rendered unqualified "simply because [his] experience does not match the matter at hand." *Furmanite America, Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1126, 1129 (S.D. Fla. 2007) (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). Indeed, any inquiry into an expert's qualifications is "not stringent," and "so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (citations omitted); *see also Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 507 n.10 (5th Cir. 1999) ("[A]fter an individual satisfies the relatively low threshold for qualification, the depth of one's qualification [should] be the subject of vigorous cross-examination.").

After considering Mr. Arce's credentials, we find that he is qualified to testify as to the extent, scope, and value of the damages allegedly suffered by Plaintiff's facility. Mr. Arce, a licensed public adjuster in Florida, possesses more than a decade of experience in this field and holds nine (9) separate certifications and accreditations, including those pertaining to wind and water damage. [D.E. 44-1, p. 10]. His work often includes assessments of property damage stemming from major weather events, including hurricanes, which reaches the very core of the parties' dispute here. Thus, he is qualified to offer opinions on the damage allegedly suffered by the subject property in this case.

We cannot say the same as to causation. As a public adjuster, Mr. Arce certainly is experienced in measuring damages *involved* in these types of claims; but there is nothing in his report that indicates he possesses the ability to determine the *cause* of such damages. Indeed, in his own report Arce admits that he "acquired education, training, and experience in relation to establishing the reasonable necessary *course, scope, and value of losses*…associated with an insurance claim." [D.E. 44-1]. But we see nothing in his background that would allow us to find that he may independently opine on the cause of those damages, and his affidavit does not provide a satisfactory explanation on how he would be equipped to reach such an opinion here.[1]

---

[1] For example, Arce's resume does not show any kind of experience as an engineer or reflect a background in overseeing major construction projects, each of which might allow us to find that he could opine on causation. *Cf. Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661-62 (S.D. Fla. 2012) ("[A]ssessing structure-related damages to a building would seem to be a natural fit with the

As such, we find that Arce is qualified to state his opinions with regard to the extent of the damages suffered here and the costs associated with any necessary repairs, but Plaintiff may not elicit any causation opinions during his testimony.

### 2. *Methodology*

Next, we reject Defendant's contention that Mr. Arce's methodology is unreliable. When evaluating the methodology supporting an expert's opinion, a court may consider factors such as whether the expert's theory or technique can be and has been tested, whether the theory or technique has been subjected to peer review and publication, whether there is a known or potential rate of error for a technique, whether there are standards controlling the technique's operation, and whether the theory or technique is generally accepted. *Anderson v. Mascara*, 347 F. Supp. 3d 1163, 1180 (S.D. Fla. 2018) (citing *Kumho*, 526 U.S. at 149-50). However, the evaluation of methodology varies from case to case, and when looking at non-scientific issues, the relevant reliability concerns can and should focus on personal knowledge and experience. *Id.* (citing *Frazier*, 387 F.3d at 1262; *Kumho*, 526 U.S. at 150).

We are satisfied that Arce utilized a reliable methodology to reach his opinions on the extent and scope of damages to the property. Indeed, his role as a public adjuster requires him to regularly make such determinations in a professional capacity, which is sufficient in and of itself. His affidavit also discusses the

---

training and experience that a *professional civil engineer* has.") (emphasis added); *Broussard v. State Farm Fire & Cas.*, 523 F.3d 618, 631 (5th Cir. 2008) (affirming district court ruling allowing *structural engineer* to testify that storm surge and not hurricane-force winds caused damage).

information he consulted in order to reach his conclusions, which included his review of relevant weather data, performance of site inspections, and a consultation of public records related to past damage the property may have suffered during other weather-related events. This, in our view, is sufficient to satisfy the requirements set forth by Rule 702 and *Daubert*.

We also note that Defendant failed to depose Mr. Arce (as well as Mr. Gonzalez and Mr. Brizuela) despite having more than two months to do so before the close of discovery. While not outcome-determinative, it would have certainly assisted Defendant in "filling in the blanks" it now complains of with regard to Mr. Arce's methodology. *See Ward v. Carnival Corp.*, 2019 WL 1228063, at *5 (denying *Daubert* motion for, among other things, party's failure to depose expert despite having the opportunity to do so). Defendant's broadside challenge to Arce's methodology is insufficient in light of the fact that it failed to take advantage of the rules allowing for further investigation of an expert's opinion, which provides further support for denial of the Motion on this basis. *See id.* ("[I]f Plaintiff lacks salient details as to what [the expert] did or did not do in reaching her conclusions, or how the literature supports her findings, it seems to us that this occurred as a result of Plaintiff's own failure to seek the information he claims he now does not possess, and not because the expert's [methodology] is somehow lacking."); *see also Continental Motors, Inc. v. Jewell Aircraft, Inc.*, 2013 WL 5530842, at *7-8 (M.D. Ala. Oct. 4, 2013) (denying motion to strike based on party's decision to "plung[e] into a full-blown *Daubert* [challenge] without first taking [the expert's] deposition.").

### 3. *Helpfulness*

As to Defendant's third point – that Arce's testimony will be unhelpful – we again disagree. Expert testimony is helpful to the trier of fact "if it concerns matters that are beyond the understanding of the average layperson." *Frazier*, 387 F.3d at 1262. "Proffered exert testimony generally will *not* help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id*. at 1262-63 (emphasis added; citation omitted). An expert opinion also fails to satisfy the helpfulness prong when it would tend to cause confusion to the trier of fact. *Id*. at 1258.

The scope and extent of damages the property suffered is not something a layperson would know without assistance from an expert. *See* Fed. R. Evid. 702. As a public adjuster, Arce will be able to explain the extent of the damage to the roof, his estimate of what the repairs will cost, and why the roof needs to be replaced at this time – all information a person without experience in his field would not be able to ascertain on his or her own. *See Frazier*, 387 F.3d at 1262 (expert testimony admissible "if it concerns matter that are beyond the understanding of the average layperson.") As such, the Court finds that Arce's testimony, will be helpful to the jury under *Daubert*.

### C. <u>Alain Gonzalez</u>

Defendant, in challenging the testimony to be offered from Mr. Gonzalez, repeats the same arguments raised in connection with their challenge to Mr. Arce –

that he is unqualified, unreliable, and unhelpful. [D.E. 109, p. 9-11]. We will dispose of these arguments in summary fashion, as we have dealt with them in detail above.

First, Mr. Gonzalez is qualified to testify as to the scope and extent of damages to the subject property, but he may not trace the cause of those damages to Hurricane Irma. Mr. Gonzalez's background as a general contractor certainly is sufficient and qualifies him to discuss the structural integrity of the property at issue, the damage it allegedly suffered from the weather event, and the costs necessary to repair such damages.[2] He may also testify that the roof cannot be partially repaired as a result of the allegedly significant damage. For the same reasons discussed in the section pertaining to Mr. Arce, however, we find that his role as a general contractor does not qualify him to opine as to causation.

Defendant's remaining arguments in support of the Motion, which involve Gonzalez's methodology and helpfulness, are rejected for the same reasons discussed above. Should Defendant wish to attack the "factual underpinnings" supporting Gonzalez's ultimate conclusions, it remains free to do so at trial. *See Sorrels*, 796 F.3d at 1285. Such challenges should be made during cross examination, however, because each go to the weight of the testimony, not admissibility. *Id.*; *see also See Mcgarity v. FM Carriers, Inc.*, 2012 WL 1028593, at *7 (S.D. Ga. Mar. 26, 2012) ("[T]he

---

[2] Mr. Gonzalez, in his role as a general contractor, has worked in the field for 19 years and possesses several relevant certifications. His role as a senior project manager in his current position has also allowed him to work on major, multi-million dollars construction projects for clients in the educational, commercial, and healthcare fields.

identification of flawed data or facts relied upon by an expert is precisely the role of cross-examination and does not render expert testimony inadmissible under *Daubert*.").[3]

### D. *Alfredo Brizuela*

To conclude, and for the reasons stated above, we reject Defendant's helpfulness and reliability arguments as to Brizuela. The only difference here is that we find that he *is* qualified – unlike Mr. Arce and Mr. Gonzalez – to testify as to causation, mostly because he possesses a background in engineering that the other two experts lack.

Indeed, Mr. Brizuela obtained a degree in architectural engineering in 1978 and has over 35 years of experience in the field. He is a Florida-licensed civil and structural engineer who has worked on countless projects, and his resume demonstrates his extensive involvement with building and design inspection services. For this reason, we find that he may testify as to scope and extent of the damages suffered by the property at issue, in addition to the cause of those damages. *See Clena Investments, Inc.*, 280 F.R.D. at 661-62 ("[A]ssessing structure-related damages to a building would seem to be a natural fit with the training and experience that a professional civil engineer has."); *see also Traveler Indem. Co. of Conn. v. Centimark Corp.*, 2010 WL 3431159, *2 (S.D. Fla. Aug. 30, 2010) (finding

---

[3] We pause here to note, once again, the fact that each of the expert's affidavits appear to be identical, or nearly so. This should provide ample fodder for cross-examination purposes, but it does not support Defendant's request for exclusion of the opinions under *Daubert*.

licensed engineer qualified to provide expert opinion that installation of roofing system was faulty).

## IV. CONCLUSION

In accordance with our findings above, we hereby **ORDER** the following:

1. Defendant's Motion to Strike Alfredo Brizuela's opinions is **DENIED**.

2. Defendant's Motion to Strike with regard to Manny Arce and Alain Gonzalez is **GRANTED in part** and **DENIED in part**. Arce and Gonzalez are precluded from offering causation testimony; all other opinions are admissible at trial.

**DONE AND ORDERED** in Chambers at Miami, Florida this 11th day of September, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge